UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| In Re: AUTOMOTIVE PARTS ANTITRUST LITIGATION | 12-md-02311 Honorable Marianne O. Battani |
| In Re: RADIATORS | 2:13-cv-01000-MOB-MKM |
| THIS RELATES TO: ALL DEALERSHIP ACTIONS ALL END-PAYOR ACTIONS | 2:13-cv-01002-MOB-MKM 2:13-cv-01003-MOB-MKM ORAL ARGUMENT REQUESTED |

**DEFENDANTS MITSUBA CORPORATION AND AMERICAN MITSUBA CORPORATION'S REPLY IN SUPPORT OF THEIR
MOTION TO DISMISS THE DEALERSHIP PLAINTIFFS' CONSOLIDATED AMENDED CLASS ACTION COMPLAINT AND END-PAYOR PLAINTIFFS' <u>CONSOLIDATED AMENDED CLASS ACTION COMPLAINT</u>**

Like their Complaints, Plaintiffs' Opposition is notable for what it does not say. It does not say that Mitsuba Corporation or American Mitsuba Corporation ("Mitsuba") manufactured radiators as opposed to the component radiator fans. It does not say that Mitsuba set the prices for finished radiator units. Nor does it say what Mitsuba supposedly did to participate in a conspiracy relating to the radiator units that it did not manufacture or sell. Mitsuba's opening memorandum pointed out these fatal deficiencies in Plaintiffs' Complaints, but Plaintiffs have failed to respond to them.

Instead of addressing these deficiencies, Plaintiffs opted to continue their definitional games. They argue that because the Complaints define "Radiator" to mean both a finished radiator unit (which would include a radiator fan component) and the radiator fan component itself that the Court must accept this nonsensical proposition to be true. Not only does this definition not make sense on its face, it is also contradicted by the Complaints' own allegations showing that a radiator fan is just one component of a radiator unit, similar to a "[h]eater [h]ose[]," a "[p]ressure [c]ap," and a "[t]hermostat." *See* DP CACAC ¶ 113; EP CACAC ¶ 90. Allegations that are "contradicted in the complaint itself" need not be accepted as true on a motion to dismiss. *Atkins v. City of Chicago*, 631 F.3d 823, 831–32 (7th Cir. 2011); *Gersten v Rundle*. 833 F. Supp. 906, 910 (S.D. Fla. 1993), *affd*, 56 F3d 1389 (11th Cir. 1995), *cert denied* 516 U.S. 1118 (noting court need not accept allegations of complaint when facts alleged in complaint are internally inconsistent). Thus, this Court can and should reject Plaintiffs' self-contradictory definition that a radiator fan is a radiator unit.[1]

Nor are the Complaints' definitional allegations similar to the allegations in the *Wire Harness* complaints, which did not contradictorily "define" wire harnesses to be both finished wire harnesses and each individual component itself. Rather, the Complaints in *Wire Harnesses*

---

[1] The allegations at issue in *In re Fasteners Antitrust Litigation* are similarly incomparable to the Complaints' contradictory allegations about "Radiators." In *Fasteners*, the court found that the plaintiffs did not need to identify the particular types of fasteners that comprised the alleged conspiracy in the fastener market. *See* No. CIV.A. 08-MD-1912, 2011 WL 3563989, at *10 (E.D. Pa. Aug. 12, 2011). That is reasonable: buttons and zippers are kinds of fasteners—they are substitutable products that compete with each other and can reasonably be said to be part of a market, thus rendering an allegation of a wider fastener market conspiracy plausible. But here, the deficiency in the Complaints' allegations is not that they fail to identify with specificity which radiator units are purportedly part of their radiator unit market. Rather, it is that the Complaints have defined "Radiators" to include both radiator units and a mere component of a radiator unit. To create a factual situation analogous to that presented here the *Fasteners* plaintiffs would have to have tried to define "fasteners" as not only zippers and buttons, but also the raw materials used to make zippers and buttons. They did not, and the *Fasteners* decision does not support Plaintiffs' overreaching in this case.

alleged that "'Wire Harness Products' . . . refer to wire harnesses" and a number of related products and stated that "[w]ire harnesses are electrical distribution systems," *see* Consol. Am. Class Action Compl. ¶ 10, *In re Automotive Wire Harness Sys. Antitrust Litig.*, No. 12-md-02311 (E.D. Mich. May 14, 2012) (ECF No. 86) (direct purchaser complaint), or that "'Automotive Wire Harness Systems' include" a number of components; *see* Corrected Consol. Am. Class Action Compl. ¶ 3, *In re Wire Harness Systems*, No. 12-md-02311 (E.D.Mich. June 26, 2012) (ECF No. 174) (end-payor complaint).

Further, the *Wire Harnesses* decision concerned a factually dissimilar situation in which Denso and other defendants had pleaded guilty to a conspiracy *involving the underlying component part*, and the other defendants' pleas spanned the full wire harness product (including the underlying component part). *See In re Wire Harnesses*, Nos. 2:12-cv-00101, 2:12-cv-00103, 2013 WL 2456585, *1, *2 (E.D. Mich. June 6, 2013) (citing plea of Denso to conspiracy involving electronic control units and pleas of Furukawa Electric Co., Ltd. and Yazaki Corporation to conspiracy involving wire harnesses and electronic control units).

Here, by contrast, no one has pleaded guilty to a conspiracy involving radiator fans. Plaintiffs assert that Mitsuba pleaded guilty to conspiring with others regarding radiator fans, *see* Opp. at 7, 8, but Plaintiffs' Complaints and Mitsuba's plea agreement show they are wrong. As Plaintiffs recognize in their Complaints, Mitsuba agreed to assist the Department of Justice's investigation by cooperating with respect to radiator fans, but it not did plead guilty to conspiring with respect to them. *See* DP CACAC ¶ 7; EP CACAC ¶ 114; Plea Agreement ¶¶ 4, 14, *United States v. Mitsuba Corp.*, No. 2:13-cr-20712-GCS-PJK (E.D. Mich. Nov. 6, 2013) (compare ¶ 4, the description of the charges as to which Mitsuba agreed to plead guilty, with ¶ 14, which

3

describes Mitsuba's cooperation obligations).[2] And Mitsuba's codefendants' pleas make no mention of conspiring with regard to radiator fans. *See United States v. Denso Corp.*, 2:12-cr-20063-GCS-PJK at ¶ 2 (E.D. Mich. Mar. 5, 2012); *United States v. T.RAD Co., Ltd.*, No. 2:13-cr-20708-GCS-PJK at ¶¶ 2, 4 (E.D. Mich. Nov. 12, 2013). Denso's plea does not speak of either radiators or radiator units, and T.RAD Co., Ltd.'s plea speaks only of whole radiators. Further, T.RAD Co., Ltd. and Calsonic Kansei Corporation were allegedly fined for conspiring with regard to radiator units, not radiator fans. *See* DP CACAC ¶ 133; EP CACAC ¶ 108. Thus, none of the plea agreements Plaintiffs cite support their allegations that there was a conspiracy involving radiator fans or a conspiracy spanning both radiator fans and radiators.[3]

Second, this case is different than *Wire Harness* because that decision did not address the need to evaluate the alleged conspiracy under the rule of reason because of the alleged conspiracy's vertical components, presumably because Denso did not raise that issue in its motion. Here, as Mitsuba noted in its motion to dismiss, despite the Complaints' attempts to allege a horizontal conspiracy by means of the ambiguous use of "Radiators," the Complaints' factual allegations relating to radiator fans appear to relate to a vertical agreement.[4] If Plaintiffs

---

[2] In fact, Mitsuba's pleaded guilty with respect to a conspiracy involving fan motors—small electric motors used to turn radiator cooling fans—not radiator fans or radiators. *See* Plea Agreement ¶ 4.

[3] Plaintiffs take a bridge too far the Court's statement that pleas and investigations about one part can support a plausible allegation of a conspiracy with regard to another part. *See* Opp. 7–10. But the Court never indicated that pleas and investigations as to one part can provide a sufficient basis to allege a defendant conspired with regard to a part it neither manufactures nor markets. Nothing in Mitsuba's plea, the pleas of the other Defendants, or the government investigations support the allegation that Mitsuba manufactures or markets radiator units.

[4] To plead a horizontal conspiracy, Plaintiffs must allege facts showing that Mitsuba competes in the same market as the other Defendants by manufacturing and marketing a substitutable product. *See In re Southeastern Milk Antitrust Litig.*, 739 F.3d 262 272 (6th Cir. 2014) (holding only parties "at the same level of the market structure" may engage in a horizontal conspiracy); *ProMedica Health Sys., Inc. v. FTC*, 749 F.3d 559, 565 (6th Cir. 2014) ("The

4

are seeking to allege that Mitsuba conspired as a radiator-fan supplier with some or all of the other Defendants that made radiators, then they must plead allegations sufficient to suggest liability under a rule of reason analysis because any such conspiracy would be vertical, not horizontal. *See Expert Masonry, Inc. v. Boone County, Ky.*, 440 F.3d 336, 344 (6th Cir. 2006) ("[I]t is vital to distinguish between horizontal restraints that involve direct competitors at a given level of the market, and vertical restraints that typically involve entities that are upstream or downstream of one another."); *Care Heating & Cooling, Inc. v. Am. Standard, Inc.*, 427 F.3d 1008, 1013–14 (6th Cir. 2005) (dismissing complaint because it did not allege elements necessary under rule of reason analysis). But Plaintiffs plead no facts, only conclusory allegations, let alone facts sufficient to survive a rule of reason analysis.

Moreover, Plaintiffs plead no facts to show Defendants would have any plausible motive for a vertical conspiracy. Plaintiffs allege that the nature of the conspiracy was an agreement to "rig bids, and to fix, stabilize, and maintain the prices" of "Radiators." DP CACAC ¶ 1; *accord* EP CACAC ¶ 1. Assuming "Radiators" in that sentence refers to radiator units,[5] then Mitsuba could not rig bids or stabilize prices because it does not bid on or set prices for radiator units. The Complaints plead no facts to show how Mitsuba could therefore assist the conspiracy, and they plead no possible reason why Mitsuba would join the conspiracy, nor a motive on behalf of the alleged coconspirators to include Mitsuba in such a conspiracy. At the motion to dismiss stage, a court "must 'take account of the absence of a plausible motive to enter into the alleged . . . conspiracy.'" *Loren Data Corp. v. GXS, Inc.*, 501 F. App'x 275, 280 (4th Cir. 2012) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 595 (1986)) (ellipsis

---

first principle of market definition is substitutability: a relevant product market must identify a set of products that are reasonably interchangeable[.]" (internal quotation marks omitted)).

[5] As discussed above, there is no plausible basis to allege such a conspiracy with respect to radiator fans.

in original); *accord DM Research, Inc. v. College of Am. Pathologist*, 170 F.3d 53, 56 (1st Cir. 1999) (dismissing claim where motivation to enter into alleged conspiracy was "highly implausible"). Here, the Complaints plead nothing to provide any economic rationale for Mitsuba's supposed involvement in the conspiracy.

Nor does Plaintiffs' conclusory assertion that "Plaintiffs allege that Mitsuba had a direct and substantial interest in the outcome of the conspiracy and actively participated in its ongoing success" support their argument. *See* Opp. 8. This statement, even if it did appear in the Complaints, which it does not,[6] would be textbook conclusory pleading that *Twombly* makes clear is insufficient. *See Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 556 (2007). The Complaints say nothing about what Mitsuba's "direct and substantial interest in the outcome of the conspiracy" might be. They are also entirely silent on how Mitsuba supposedly "actively participated in its ongoing success." The Complaints must allege facts "that plausibly suggest that each Defendant participated in the alleged conspiracy," but they do not. *In re Static Random Access Memory (SRAM) Antitrust Litig.*, 580 F. Supp. 2d 896, 904 (N.D. Cal. 2008); *see also Ctr. for Bio Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 378 (6th Cir. 2011) (dismissing claims where only supported by vague allegations).

Plaintiffs' shape-shifting definition of "Radiators" and subsequent hand-waving in their Opposition do not fill in the gaps in Plaintiffs' Complaints. Plaintiffs cannot argue that they sufficiently allege a horizontal conspiracy because when they use "Radiator" in the Complaints,

---

[6] Accordingly, even if it were a nonclusory statement, it would still provide no basis to deny the motion to dismiss because "[i]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *United States v. Medquest Assocs., Inc.*, 702 F. Supp. 2d 909, 918 n.2 (M.D. Tenn. 2010); *see also La. School Emps.' Ret. Sys. v. Ernst & Young, LLP*, 622 F.3d 471, 486 (6th Cir. 2010) ("Absent [a motion to amend], Defendant was entitled to a review of the complaint as filed pursuant to Rule 12(b)(6)."); *Jocham v. Tuscola Cnty.*, 239 F. Supp. 2d 714, 732 (E.D. Mich. 2003) ("The pleading contains no such allegation, and the plaintiffs may not amend their complaint through a response brief.").

they mean radiator units, but then argue that they plausibly allege Mitsuba sold "Radiators" because, when they use "Radiator" in the Complaints, they mean radiator fans, and then again argue that Mitsuba was motivated to enter the conspiracy because, when they use "Radiator" in the Complaints, they meant radiator units after all. Mitsuba cannot reasonably be expected to respond to such a moving target. Mitsuba respectfully requests the Court grant Mitsuba's motion to dismiss.

Dated: November 17, 2014 Respectfully submitted,

*/s/ George A. Nicoud III*
George A. Nicoud III (SBN 160111)
tnicoud@gibsondunn.com
Austin Schwing (SBN 211696)
aschwing@gibsondunn.com
Stuart McPhail (SBN 287048)
smcphail@gibsondunn.com
**GIBSON, DUNN & CRUTCHER LLP**
555 Mission Street, Suite 3000
San Francisco, CA 94105
Telephone: (415) 393-8200
Facsimile: (415) 393-8306

*Counsel for Defendants American Mitsuba Corporation and Mitsuba Corporation*

## **CERTIFICATE OF SERVICE**

    I hereby certify that on this 17th day of November, 2014, I caused a true and correct copy of the foregoing DEFENDANTS MITSUBA CORPORATION AND AMERICAN MITSUBA CORPORATION'S REPLY IN SUPPORT OF THEIR MOTION TO DISMISS THE DEALERSHIP PLAINTIFFS' CONSOLIDATED AMENDED CLASS ACTION COMPLAINT AND END-PAYOR PLAINTIFFS' CONSOLIDATED AMENDED CLASS ACTION COMPLAINT to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

                                            */s/ George A. Nicoud III*
                                            George A. Nicoud III
                                            Gibson, Dunn & Crutcher LLP
                                            555 Mission Street, Suite 3000
                                            San Francisco, CA 94105
                                            (415) 393-8200
                                            tnicoud@gibsondunn.com
                                            106111

                                            *Counsel for Defendants Mitsuba Corporation and American Mitsuba Corporation*