**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

_____

IN RE: AUTOMOTIVE PARTS
ANTITRUST LITIGATION

MASTER FILE NO. 12-md-02311
HON. MARIANNE O. BATTANI

_____

| | |
|---|---|
| In Re: Anti-Vibration Rubber Parts | 2:13 cv-00802, 13-cv-00803 |
| In Re: Radiators | 2:13-cv-01002, 13-cv-01003 |
| In Re: Switches | 2:13-cv-01302, 13-cv-01303 |
| In Re: Motor Generators | 2:13-cv-01502, 13-cv-01503 |
| In Re: HID Ballasts | 2:13-cv-01702, 13-cv-01703 |
| In Re: Electronic Power Steering Assemblies | 2:13-cv-01902, 13-cv-01903 |
| In Re: Fan Motors | 2:13-cv-02102, 13-cv-02103 |
| In Re: Power Window Motors | 2:13-cv-02302, 13-cv-02303 |
| In Re: Windshield Washer Systems | 2:13-cv-02802, 13-cv-02803 |

_____

THIS DOCUMENT RELATES TO:

Auto Dealer Actions
End-Payor Actions
_____/

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' COLLECTIVE MOTION TO DISMISS END-PAYORS' AND AUTO DEALERS' CONSOLIDATED AMENDED CLASS ACTION COMPLAINTS**

Before the Court is Defendants' Collective Motion to Dismiss End-Payors' and Auto Dealers' Consolidated Amended Class Action Complaints (Doc. No. 57 in Case No. 13-802, Doc. No. 37 in 13-803; Doc. No. 58 in 13-1002, Doc. No. 52 in 13-1003; Doc. No. 43 in 13-1302, Doc. No. 25 in 13-1303; Doc. No. 34 in 13-1502, Doc. No. 28 in 13-1503; Doc. No. 70 in 13-1702, Doc. No. 50 in 13-1703; Doc. No. 46 in 13-1902, Doc.

No. 35 in 13-1903; Doc. No. 26 in 13-2102, Doc. No. 20 in 13-2103, Doc. No. 36 in 13-2302, Doc. No. 32 in 13-2303, Doc. No. 36 in 13-2802, Doc. No. 23 in 13-2803).

Automobile Dealer Plaintiffs ("ADPs") and End Payor Plaintiffs ("EPPs") (collectively "Indirect Purchaser Plaintiffs" or "IPPs" ) bring class actions against Defendants under federal and state law based on Defendants' alleged conspiracy to rig bids and fix the prices of nine separate automotive parts. In their motion, Defendants[1] challenge the sufficiency of the allegations of the conspiracy to fix prices on products filed by two different groups of plaintiffs–automobile dealers and end-payors. The Court scheduled oral argument for January 28, 2015; however, prior to the hearing, the parties waived oral argument. The Court has reviewed all of the filings, and for the reasons that follow, Defendants' motion is **GRANTED in part and DENIED in part.**

## I. INTRODUCTION

After the United States Judicial Panel on Multidistrict Litigation ("Judicial Panel" or "Panel") transferred actions sharing "factual questions arising out of an alleged conspiracy to inflate, fix, raise, maintain, or artificially stabilize prices of automotive wire harness systems" to the Eastern District of Michigan, (12-md-02311, Doc. No. 2), in February 2012, the scope and extent of alleged antitrust conspiratorial conduct in the automotive component parts industry grew significantly. In June 2012, the Judicial Panel expanded MDL No. 2311 to include alleged conspiracies to fix the prices of three additional component parts, and eventually the number of component parts reached twenty-nine. In order to eliminate duplicative discovery, prevent inconsistent pretrial

---

[1] A list of Defendants that have joined this motion is found at Exhibit A to the Collective Motion to Dismiss.

rulings, and conserve resources, the Court eventually entered a briefing order to streamline the resolution of motions filed in the component parts cases. (See Doc. No. 793 in 12-2311). In the briefing order, the Court instructed the parties to identify previously uncited authority from the Supreme Court of the United States, the Sixth Circuit, or the highest court of the state under which the claim was brought. Id. Consequently, to the extent that no new authority is included, the Court relies on the analysis set forth in its prior opinions resolving collective motions to dismiss Indirect Purchaser Plaintiffs' complaints. To the extent that the parties argue for a different outcome on a particular claim, but provided no new authority, or provide new authority to support a previous outcome, the Court declines to address these arguments. Instead, the Court directs its attention to those claims where Defendants or IPPs assert that new case law requires a different resolution from the Court's prior decisions.

**A. Standing**

The parties dispute whether IPPs have satisfied the constitutional requirement for standing; specifically, whether each plaintiff alleged a "personal injury fairly traceable to the defendant's allegedly unlawful conduct" that is "likely to be redressed by the requested relief." Allen v. Wright, 468 U.S. 737, 751 (1984) overruled on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc., _ U.S. _, 134 S. Ct. 1377 (2014).

Defendants' assertion, that the standing requirement is not satisfied under any state laws invoked because IPPs have not alleged a causal connection between their alleged injury and Defendants' alleged unlawful conduct, has been rejected previously by this Court. Defendants do, however, advance a new argument. The argument is not

3

based on new case law; rather, it is grounded in Defendants' characterization that the allegations in the complaints of two of the component parts do not satisfy the pleadings requirements set forth in Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007).

Federal Rule of Civil Procedure 12(b)(6) allows a district court to dismiss a complaint which fails "to state a claim upon which relief can be granted." When reviewing a motion to dismiss, a district court "must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the complaint contains enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. Although the federal procedural rules do not require that the facts alleged in the complaint be detailed, "'a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do.' " Twombly, 550 U.S. at 555; Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

In Twombly, the Supreme Court considered the pleading requirements needed to withstand a motion to dismiss relative to a section 1 Sherman Act claim. It held that the complaint must contain enough factual matter to "plausibly suggest" an agreement:

> Asking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement. And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.

550 U.S. at 556 (internal punctuation and citation omitted).

According to Defendants, IPPs lack constitutional standing because they must allege facts that establish they purchased cars with HID Ballasts, one of the component parts at issue in this motion, indirectly from one or more of Defendants during the Class Period. However, HID Ballasts generally are found in a small number of vehicles. Therefore, Defendants assert that Indirect Purchaser Plaintiffs should have to identify the specific models sold by ADPs or purchased by ADPs or EPPs. Defendants also raised this argument relative to another component part, Motor Generators, which are only used in electric and hybrid/electric vehicles. The parties subsequently reached stipulations resolving the argument. See Doc. No. 55 in 13-1502; Doc. No. 45 in 13-1503. In response to Defendants' HID Ballasts' argument, IPPs claim that in 2005, HID headlamps, which require HID Ballasts, were found in 95 models of automobiles.

This matter is here on a Rule 12(b)(6) motion. Defendants, who build their argument on facts outside the pleadings, seek to have a heightened degree of specificity applied to IPPs' claims. The Court, however, must credit the allegations advanced by IPPs, that they sold and purchased vehicles containing these products. Therefore, Defendants request for dismissal on this ground is premature and it is denied without prejudice.

### B. Availability of Relief under State Law

IPPs advance claims based on antitrust, consumer protection, and unjust enrichment laws of various states. In prior motions, Defendants argued for dismissal based upon the limitations period applicable to each state antitrust, consumer protection, and unjust enrichment claim governing the timeliness of IPPs causes of action. To the extent that the Court has addressed these arguments in prior component part cases, it

reaches the same decision. To the extent that Defendants and IPPs advance new authority, as specified in the Court's briefing order, and assert arguments distinguishing the situation here from the Court's prior decisions, those arguments are addressed below.

### 1. Antitrust Claims

Indirect Purchaser Plaintiffs advance state antitrust claims under the laws of Arizona, California, Hawaii, Illinois, Iowa, Kansas, Maine, Michigan, Mississippi, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, South Dakota, Tennessee, Utah, Vermont, West Virginia, Wisconsin, and the District of Columbia. As they have in other component parts cases, Defendants raise several grounds for dismissal, including, standing for component parts purchasers, the sufficiency of the nexus between conduct and interstate commerce, and availability of class action antitrust claims. The only new authority advanced by the parties deal with Oregon, Illinois, and Hawaii. Those arguments are discussed below.

### a. Repealer Statutes

In response to the Supreme Court's prohibition against antitrust actions by indirect purchasers articulated in Illinois Brick Co. v. Illinois, 431 U.S. 720 (1977), many states enacted repealer provisions, allowing state actions for indirect purchasers. In California v. ARC Am. Corp., 490 U.S. 93, 105-06 (1989), the Supreme Court held that federal law does not preempt state indirect purchaser statutes. Oregon has declared illegal, "[e]very contract, combination in the form of trust or otherwise, or conspiracy in restraint of trade or commerce. . . ." Or. Rev. Stat. Ann. § 646.725. Indirect Purchaser

Plaintiffs proceed under the Oregon Illinois Brick repealer statute enacted in 2010. The statute allows "a person" to sue for injury and recover treble damages. Or. Rev. Stat. § 646.780. Prior to 2010, only the state attorney general could bring an indirect purchaser claim.

Defendants ask the Court to find the antitrust claims brought under the laws of Oregon are barred relative to any conduct that occurred before the Illinois Brick repealer statute was enacted. According to Defendants, the statute cannot be applied retroactively. As support for their position, Defendants rely on Olson v. Wheelock, 680 P.2d 719, 720 (Or. Ct. App. 1984). In Oleson, the court dismissed an antitrust claim for failure to state facts sufficient to constitute a claim for relief. The court noted that the statute did not contain an express retroactivity provision, included a new civil remedy authorizing treble damages, and authorized criminal prosecution. Id. Further, the plaintiff conceded during a hearing that the conduct challenged occurred on October 23, 1973, and the governing statute was not effective until September 12, 1975.

Defendants assert that the statute under which IPPs proceed in this case, likewise does not address retroactively, and likewise does not address matters of a remedial or procedural nature. Therefore, the logical conclusion is that the legislature intended the statute to apply only prospectively. Defendants rely on two multidistict antitrust cases to support their position on retroactivity. See In re Niaspan Antitrust Litig., 42 F. Supp. 3d 735, 759 (E.D. Pa. Sept. 5, 2014) (citing Strizver v. Wilsey, 210 Or.App. 33, 150 P.3d 10, 12 (2006) (noting that "substantive statutes"—those that "impair existing rights, create new obligations or impose additional duties with respect to past transactions"—are presumed to apply prospectively) and In re TFT-LCD (Flat Panel) Antitrust Litig., Nos. M

07-1827 SI, C 10-4346 SI, 2011 WL 1113447 at *4 (N.D. Cal. Mar. 25, 2011) (limiting the State of Oregon's antitrust claims to conduct that took place after the enactment of the Illinois Brick repealer statute, ORS § 646.770-780)).

The language at issue in the cases relied upon by Defendant stated that it applied to conduct occurring after the effective date. In contrast, the applicable provision of the Oregon Antitrust Act under which IPPs proceed includes no such language. Instead, the Act applies to an action that is "commenced on or after the effective date of this 2009 Act." Or. Rev. Stat. § 646.780. IPPs observe that the lawsuits here were commenced after the effective date.

In determining whether the new legislation applies to conduct that occurred before the enactment, the Court is mindful that it must discern the legislature's intent. State ex rel Juv. Dept. v. Nicholls, 87 P.3d 680, 684 (Or. Ct. App. 2004). In making that determination, courts first examine the text for an express retroactivity clause. State v. Lanig, 963 P.2d 58, 61-62 (Or. Cr. App. 1998). When none is included, courts look for other "textual cues such as verb tense and other grammatical choices" that may shed light on the legislative intent. Newell v. Weston, 946 P.2d 691, 697 (Or. Cr. App. 1997). If the intent still is not clear, courts may consider legislative history. Lanig, 963 P.2d at 61. Courts may apply rules of construction. Whipple v. Howser, 632 P.2d 782, 786 (Or. 1981). Finally, under Oregon law, remedial changes are presumed to apply retroactively whereas substantive changes are presumed to apply prospectively. See Joseph v. Lowery, 495 P.2d 273, 276 (Or. 1972).

Here, however, IPPs rely on Whipple v. Howser, 632 P.2d 782, 784 (Or. 1981), to

8

support their position that the legislative intent is clear. The plaintiff in Whipple, a passenger in a vehicle involved in an accident, filed an action for damages. The issue raised on appeal was the viability of the suit in light of the repeal of a guest passenger act where the claim accrued before the effective date of the repeal, but was commenced after the effective date. The statute read in relevant part, "This Act does not apply to an action or other proceeding commenced before the effective date of this Act." Id.

In assessing the applicability, the Oregon Supreme Court observed that "before an action could be 'commenced'. . .the action must have 'accrued.' " Based on that language, the highest court in Oregon determined that statutory construction was not necessary because the language in the savings clause constituted a "clear statement of legislative intent." Id. at 786. In light of the clear direction set forth in Whipple, this Court finds that the it cannot agree with Defendants that the legislature intended the statute to apply prospectively. Therefore, the Court declines to limit IPPs' antitrust claims under Oregon law to conduct that occurred on or after January 1, 2010.

### b. Class Action

Defendants argue that the ADPs' claim on behalf of themselves and other similarly situated automotive dealers under Illinois law must be dismissed. See 740 Ill. Comp. Stat. §10/7(2). This Court agrees that Illinois does not allow an indirect purchaser plaintiff to maintain an antitrust claim as a class action and has dismissed such claims in previous decisions on component parts cases based upon the Supreme Court's decision in Shady Grove Orthopedic Assoc. v. Allstate Ins. Co., 559 U.S. 393, 412 (2010) that Rule 23 applies in federal court unless it "abridge[s], enlarge[s] or modif[ies] any substantive right" under the Rules Enabling Act, 28 U.S.C. §2072(b). A federal rule

9

"cannot govern a particular case in which the rule would displace a state right or remedy that is procedural in the ordinary sense of the term but is so intertwined with a state right or remedy that it functions to define the scope of the state-created right." Id.

Nevertheless, ADPs assert that the class action ban in the Illinois Antitrust Act does not apply to actions lodged in federal court. Instead, Rule 23, Fed. R. Civ. P. governs, and the claims may be advanced on a representative basis in federal court. In support of their position, ADPs cite In re Lithium Ion Batteries Antitrust Litig., Case No. 13-MD-2420 YGR, 2014 WL 4955377 at *21 (N.D. Cal. Oct. 2, 2014). The authority is not persuasive, nor does it satisfy the criteria set forth in the Court's briefing order. Specifically, in resolving the class action ban, the court in Lithium Ion Batteries looked to a decision involving the conflict between Rule 50, Fed. R. Civ. P., and a California state rule in formulating its analysis.

> The court observed:
>
> the Ninth Circuit reversed a district court's decision to grant a defendant's posttrial [sic] motion for judgment as a matter of law where the defendant argued that the evidence presented at trial was insufficient to support the jury's award of punitive damages, despite the defendant having failed to move for judgment as a matter of law before the case was submitted to the jury, as required by Federal Rule of Civil Procedure 50. The district court reached (and granted) the defendant's post-trial motion notwithstanding defendant's apparent waiver because it determined that a California point of law making the appealability of punitive damages non-waivable was substantive, not procedural. The Ninth Circuit reversed. It found that California's no-waiver rule. . .[did] not in itself create any substantive right. It does not add, subtract, or define any of the elements necessary to justify punitive damages; it merely establishes when and how those pre-existing substantive rules can be reviewed.  For these reasons, the [Ninth Circuit] court held that Rule 50 did not run afoul of the Rules Enabling Act, because its application affects only the process of enforcing litigants' rights and not the rights themselves.

Id. (internal citations and punctuation omitted).

Based on this analysis, the court concluded that the class action conflict also was procedural, not substantive. In re Lithium Ion Batteries Antitrust Litig., at *21. The case is neither dispositive, nor persuasive. Further, this Court already has held that the no non-Attorney General class action rule contained in the Illinois Antitrust Act is substantive and intertwined with the creation of the substantive right of indirect purchasers to sue. Accordingly, the Court dismisses ADPs' antitrust claim under Illinois law.

### c. State Statutory Prerequisites

Defendants challenge ADPs' antitrust claims brought under Hawaii statute. Specifically, Defendants assert that ADPs failed to comply with Hawaii Rev. Stat. § 480-13.3(a), which requires complaints to be filed under seal so as to allow the state of Hawaii the opportunity to prosecute. If the attorney general declines to proceed, the class plaintiff has the right to do so. See § 480–13.3(a)(5)(C). Defendants assert that ADPs failed to give notice and cite case law supporting their position that the failure to give notice has resulted in dismissal of an antitrust claim under Hawaii law. See In re Flash Memory Antitrust Litig., 643 F. Supp. 2d 1133, 1158 (N.D. Cal. 2009); In re Chocolate Confectionary Antitrust Litig., 749 F. Supp. 2d 224, 232 (M.D. Pa. 2010) (failure to follow general notification procedures enumerated by statute warranted dismissal).

In contrast to the plaintiffs in the two cases cited above, here IPPs did involve the state Attorney General, who declined to prosecute the action. Specifically, the complaints have been unsealed, and the ADPs have been given permission to proceed

by the deputy attorney general in Anti-Vibration Rubber Parts (Case No. 14-12549, Docs. No. 7, 8); Radiators (Case No. 14-12559, Doc. Nos. 7, 8); Switches (Case No. 14-12552, Doc. Nos. 7, 8); Motor Generators (Case No. 14-12556 Doc. Nos. 6, 7); HID Ballasts (Case No. 14-12554, Doc. Nos. 7, 8); Electronic Powered Steering Assemblies (Case No. 14-12551, Doc. Nos. 7, 8); Fan Motors (Case No. 14-12553, Doc. Nos. 7, 8); Power Window Motors (Case No. 14-12558, Doc. Nos. 7, 8); and Windshield Washer Systems (Case No. 14-12555, Doc. Nos. 7, 8).

In their reply, Defendants argue that ADPs failed to serve the Attorney General within the time set forth in the statute. Notably, arguments raised for the first time in a reply brief are not properly before the court. See, e.g., Scottsdale Ins. Co. v. Flowers, 513 F.3d 546, 553 (6th Cir. 2008) (citing cases). Moreover, even if Defendants were correct about the timing, they have not provided any authority to demonstrate that they have standing to raise this specific basis as a ground for dismissal. The letters themselves are even more compelling in that the state attorney general's office specifies that the complaints may be unsealed, and the plaintiffs may proceed. In sum, the statutory purposes has been met in this case–the attorney general was informed of the litigation, received a copy of the complaints, and declined to proceed. Therefore, the Court declines to dismiss the claims brought under the antitrust laws of Hawaii.

### 2. Consumer Protection Claims

In their consumer protection claims, IPPs seek relief under the laws of Arkansas, California, Florida, Massachusetts, Montana, New Mexico, New York, North Carolina,

Rhode Island, South Carolina, and Vermont. The new authority presented to the Court raises the South Carolina bar against class actions and the sufficiency to include allegations that satisfy the pleadings requirements under Florida law. Those arguments are addressed below.

### a. Class Action Bar

Defendants successfully asserted that Auto Dealer Plaintiffs are barred from bringing their consumer protection claims under South Carolina law because it prohibits class actions. See South Carolina Unfair Trade Practices Act (SCUTPA"), S.C. Code § 39-5-140(a). The Court was persuaded in prior component part cases that Defendants are correct based on several cases. See Stalvey v. American Bank Holdings, Inc., No. 4:13-cv-714, 2013 WL 6019320 at *4 (D. S.C., Nov. 13, 2013) (distinguishing Shady Grove and holding that the text of the SCUTPA that prohibits class actions, is part of the "substantive portions of South Carolina law and [is] not trumped by Federal Rule of Civil Procedure 23, even in light of the Shady Grove decision"). See also In re MI Windows and Doors, Inc. Products Liability Litig., No. 2:11–cv–00167–DCN, 2012 WL 5408563 (D.S.C. Nov. 6, 2012).

ADPs ask the Court to alter its decision in light of the analysis and result in In re Lithium Ion Batteries Antitrust Litig., No. 13-MD-2420 YGR, 2014 WL 4955377, at *21 (N.D. Cal. Oct. 2, 2014). The court found that the class-action ban did not alter the elements of the cause of action, the methods of proving those elements, or the relief available under them. Id. This authority in no way persuades the Court to alter its prior conclusion. Simply put, the highest court in South Carolina had rejected class action suits for antitrust claims, and the state court believed Shady Grove would not alter the

prohibition on class actions under the consumer protection code.  See Dema v. Tenet Physician Servs.-Hilton Head, Inc., 678 S.E.2d 430, 434 (S.C. 2009).  Accordingly, ADPs' South Carolina consumer protection claim is dismissed.

### b. Special Pleading Requirements

Indirect Purchasers Plaintiffs bring claims under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201 et seq.  The relevant language states that "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."  Fla. Stat. § 501.204.  Defendants contend that the FDUTPA requires that the injuries take place entirely within the state, and ask the Court to dismiss the claims because IPPs have not alleged that Defendants engaged in conduct in Florida.

Defendants rely on Five for Entm't S.A. v. Rodriguez, 877 F. Supp. 2d 1321, 1330 (S. D. Fla. 2012), for the proposition that the FDUTPA applies only to actions that occurred within the state of Florida.  In that case, the plaintiff, a concert promoting company, alleged that it was induced to promote four extra concerts in Argentina, by the performer's agent's threats to cancel all of the concerts and his demand for additional money.  The plaintiff already had advanced thousands of dollars to the agent.  In considering the viability of a claim under the FDUTPA, the court noted that the plaintiff had to allege the location of the conduct giving rise to the claim because the Act only applied to actions that "occurred within the state of Florida."  Id.

The Court has rejected Defendants' previous attempts to limit the FDUTPA in this way.  The statute itself includes no such restriction.  See Sheet Metal workers Local 441 Health & Welfare Plan v. GlaxoSmithKline, PLC, 737 F. Supp. 2d 380, 409 (E.D. Pa.

14

2010) (observing that "no language in the FDUTPA" implies that the scope of harm is limited to Florida alone).

Even if Defendants are correct that the complaints must involve some action that occurred within the state of Florida, IPPs have satisfied this requirement. In general the ADPs allege that are located in Florida, purchased parts and vehicles in Florida, that price competition was restrained in Florida, and that component parts were fixed at artificially high levels throughout Florida. EPPs also allege that they purchased vehicles at supracompetitive, artificially inflated prices. IPPs do not seek to apply Florida law to plaintiffs who suffered no injury in Florida. See In re Flonase Antitrust Litig., 692 F. Supp. 2d 524, 537-38 (E.D. Pa. 2010) (acknowledging state authority exists that limits claims to in-state consumers, but that the Florida Supreme Court has not weighed in on the issue); In re Wellbutrin XL Antitrust Litig., 260 F.R.D. 143, 162 (E.D. Pa. 2009) (observing that the plain language of the FDUTPA contains no residency limitation). In addition, § 501.202 of the Act provides that the provisions in the Act "shall be construed liberally to promote" the protection of "the consuming public. . . ." Consequently, the Court finds no reason to read restrictions into the statute that the legislature has failed to include. Because courts have come out on both sides of the argument, and the Florida Supreme Court has not addressed the issue, this Court denies Defendants' request to dismiss on this ground.

### 3. Unjust Enrichment Claims

Defendants challenge IPPs' unjust enrichment claims on various grounds, but argue three new cases require dismissal of ADPs' unjust enrichment claims in those states where the antitrust and consumer protection claims have been dismissed. None

of the authority cited overrules In re Cardizem CD Antitrust Litig., 105 F. Supp. 2d 618, 669 (E.D. Mich. 2000), which the Court relied upon in its previous decisions in the 12-2311 litigation. Accord In re Skelaxin (Metaxalone) Antitrust Litig., 2013 WL 2181185 at *24-25 (E. D. Tenn. 2013). Accordingly, the Court denies Defendants' request.

## V. CONCLUSION

For the reasons discussed above as well as in the Court's previous component part cases, the Court **GRANTS** in part and **DENIES** in part Defendants' motion. ADPs' antitrust claims under Illinois are **DISMISSED**; the antitrust claims under the laws of Oregon and Hawaii survive. The applicable statutes of limitation limit damages under the laws of Utah and New Hampshire. End-Payor Plaintiffs' antitrust claims under the laws of Massachusetts are **DISMISSED**. EPPs' consumer protection claim under Montana is **DISMISSED**, ADPs' South Carolina consumer protection class action is **BARRED,** ADPs' consumer protection claims under Missouri and the District of Columbia are **DISMISSED**. IPPs' unjust enrichment claim under California law is **DISMISSED**.

**IT IS SO ORDERED.**

Date: May 1, 2015　　　　　　　　　　　　s/Marianne O. Battani
　　　　　　　　　　　　　　　　　　　　MARIANNE O. BATTANI
　　　　　　　　　　　　　　　　　　　　United States District Judge

CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on May 1, 2015.

　　　　　　　　　　　　　　　　　　　　s/ Kay Doaks
　　　　　　　　　　　　　　　　　　　　Case Manager